## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**DAVINA G. PUCETA**,

                  Plaintiff

    v.

**CAROLYN W. COLVIN**
*Commissioner of the Social Security Administration*,

               Defendant

CIVIL ACTION NO. 4:14-CV-00336

(BRANN, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim of Plaintiff, Davina G. Puceta ("Puceta"), for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge for resolution pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, it is recommended that the decision of the Commissioner be **AFFIRMED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Davina Puceta, a born on September 25, 1978, has struggled with a constellation of mental impairments throughout her life. (Admin Tr. 222; Doc. 8-6 p. 22). Her mother, Sharon Connors, reported that Puceta is "sweet but very different" and "has always done strange things." (Admin Tr. 227; Doc. 8-6 p. 27). There is no evidence, however, that Puceta's limitations prevented her from working until she experienced a dramatic exacerbation of her

symptoms in April 2009. On the evening of April 3, 2009, Puceta presented to the local Emergency Room complaining of suicidal ideation and thoughts of driving her car into a tree, and reporting that she had been stealing and falsifying her time sheets at work. (Admin Tr. 271; Doc. 8-7 p. 10). Puceta was stabilized and transferred to Roxbury, an inpatient behavioral health facility, for treatment. Puceta reported that prior to the exacerbation of her symptoms she had stopped taking all of her prescribed medications. (Admin Tr. 335; Doc. 8-8 p. 7). She was released from Roxbury on April 9, 2009, and began to attend weekly individual therapy sessions at Franklin Family Services with a counselor, Philip L. Sowers.

At her first administrative hearing on July 14, 2011, and in a daily activities questionnaire, Puceta reported that she is able to dress herself but lacked motivation to dress and shower more than three or four times per week, had frequent mood swings, crying spells, racing thoughts, focal deficits, anxiety, and engages in isolating and obsessive/compulsive behavior. (Admin Tr. 29-32, 250-53; Doc. 8-2 p. 30-41, Doc. 8-6 p. 50-53). Puceta also reported that she was able to cook once or twice a week, do dishes, laundry (with supervision), clean her bathroom and bedroom, care for her daughter (with assistance), weed gardens, and drive. *Id.* She testified that she had no problems working at Karns foods – before she was fired for stealing merchandise and falsifying her timesheets – because the work was all repetitive. (Admin Tr. 42; Doc. 8-2 p. 43). Puceta did testify, however, that she missed between five and seven days a month when she "didn't want to get out of bed." *Id.* During her second hearing, on September 27, 2012, Puceta testified that her symptoms had not changed. (Admin Tr. 54; Doc. 8-2 p. 55). She also testified that she quit all of her past jobs because she was unable to cope with the stress and anxiety of the workplace. (Admin Tr. 53-54; Doc. 8-2 p. 52-53). She reported that she has

been looking for work, and would try to keep a job if she found one, but was uncertain as to whether she would be able to meet the basic mental the demands of any full time work. *Id.*

Ms. Connors, Plaintiff's mother, completed a third party function report on her daughter's behalf in which she stated that Puceta was able to care for her daughter and the family dog with reminders. (Admin Tr. 221-28; Doc. 8-6 p. 21-28). Ms. Connors also reported that Puceta needed reminders to bathe herself and change clothes, but was able to do laundry, clean, dust, mow, and weed with supervision. *Id.* Ms. Connors noted that Puceta does not always understand written instructions, needs to write down and refer back to spoken instructions, and cannot handle stress or changes in routine. *Id.*

Despite these limitations, weekly session notes by Puceta's counselor reflect steady improvement in her condition. (Admin Tr. 364-71, 415-17; Doc. 8-8 pp. 36-43, 87-89). Puceta's mood was often described as "bright" or "calm,"(Admin Tr. 364, 366; Doc. 8-8 pp. 36, 38). It was noted that Puceta was showering and changing clothes daily, (Admin Tr. 365, 366; Doc. 8-8 pp. 37, 38), was able to set a schedule and keep it for a week, (Admin Tr. 366; Doc. 8-8 p. 38), began to wear make-up (Admin Tr. 367; Doc. 8-8 p. 39), was able to use her coping skills to resolve disagreements between herself and Ms. Connors, (Admin Tr. 367; Doc 8-8 p. 39), was actively looking for a job (Admin Tr. 364, 367, 370, 371; Doc. 8-8 pp. 36, 39, 42, 43), had secured and attended one job interview, (Admin Tr. 369; Doc. 8-8 p. 41), and applied for Section 8 housing so that she could move out of her mother's home. (Admin Tr. 425; Doc. 8-9 p. 7).

On January 22, 2010, Puceta protectively filed a Title II application for DIB alleging disability beginning on April 15, 2009, due to Attention Deficit Hyperactivity Disorder ("ADHD"), Attention Deficit Disorder ("ADD"), Bi-Polar Disorder, Major Depression, and

Obsessive Compulsive Disorder ("OCD").[1] (Admin Tr. 206; Doc. 8-6 p. 6). Puceta's claim was denied initially on June 23, 2010. Thereafter, Puceta requested and was granted an administrative hearing. On July 24, 2011, Puceta, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ) Randy Riley in Harrisburg, Pennsylvania. Impartial Vocational Expert ("VE") Sheryl Bustin also appeared and testified at the January 22, 2010, hearing. On July 22, 2011, the ALJ denied Puceta's application in a written decision. (Admin Tr. 69-77; Doc. 8-3 pp. 9-17). Puceta sought review by the Appeals Council. On June 29, 2012, the Appeals Council issued an Order remanding this case to an ALJ for the resolution of three issues: (1) to clarify Plaintiff's date last insured; (2) to evaluate the limiting effects of Plaintiff's obesity in combination with her other severe impairments; and (3) give further consideration to Plaintiff's maximum RFC during the period of issue and provide a rationale with specific references to the evidence of record. (Admin Tr. 81-84; Doc. 8-3 pp. 21-24).

On September 27, 2012, a second administrative hearing was held before ALJ Riley in Harrisburg Pennsylvania. Puceta, represented by counsel, once again appeared and testified. A second VE, Paul A. Anderson, also appeared and testified. On October 11, 2012, the ALJ issued a second written decision denying Puceta's claim. (Admin Tr. 10-20; Doc. 8-2 pp. 11-21). Thereafter, Puceta sought review by the Appeals Council. On January 6, 2014, the Appeals Council denied Puceta's request for review, (Admin Tr. 1-4, Doc. 8-2 pp. 2-5), making the

---

[1] Puceta reported that the symptoms associated with her impairments increased in severity in the summer of 2010, and that she began to feel isolated and unmotivated, wanted to sleep all day, had difficulty falling and staying asleep and body aches around the same time. (Admin Tr. 232. Doc. 8-6 p. 32).

ALJ's October 11, 2012 decision the final decision of the Commissioner subject to judicial review. 20 C.F.R. §404.981.

On February 24, 2014, Puceta filed a Complaint in this Court seeking reversal of the Commissioner's decision, or in the alternative, remand for a new administrative hearing. (Doc. 1). On May 14, 2014, the Commissioner filed her answer in which she avers that the decision of the ALJ is supported by substantial evidence, thus should not be disturbed. (Doc. 7). Together with her answer, the Commissioner filed a copy of the administrative transcript. (Doc. 8). This matter has been fully briefed by the parties, and is now ripe for resolution. (Doc. 9, 10, 11).

II.   **DISCUSSION**

   A. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)(citation omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citation omitted). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993)(citation omitted). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent

[the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before the Court, therefore, is not whether Puceta is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues ...").

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A); 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Claimants proceeding under Title II of the Act must also show that he or she contributed to the insurance program and became

6

disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. §404.131(a).

In determining whether a claimant is disabled under the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the Commissioner must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520. The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her age, education, work experience and RFC. 20 C.F.R. §404.1512(f); *Mason*, 994 F.2d at 1064.

Before completing step four of this process, the ALJ must also determine the claimant's RFC. 20 C.F.R. §404.1520(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §404.1545(a)(1); SSR 96-8p, 1996 WL 374184. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

B. THE ALJ'S DECISION

In his October 11, 2012 decision, the ALJ proceeded through each step of the sequential evaluation process. The ALJ found that Puceta last met the insured status requirements of the Social Security Act on December 31, 2011. (Admin Tr. 12; Doc. 8-2 p. 13). The ALJ also found that Puceta is a "younger person" as defined by the Social Security Regulations for the purpose of his analysis, as such her age was viewed to have little impact on her ability to work. (Admin Tr. 19; Doc. 8-2 p. 20). The ALJ also found that Puceta has a high school education, and is able to communicate in English. *Id.*

At step one, the ALJ found that Puceta had not engaged in substantial gainful activity during the period between her alleged onset date, April 15, 2009, and her date last insured, December 31, 2011. (Admin Tr. 12; Doc. 8-2 p. 13). At step two, the ALJ found that through her date last insured, Puceta had the severe impairments of bipolar disorder and OCD. *Id.* The ALJ also noted that Puceta had been diagnosed with *mild* Obesity in April 2009, but concluded that the record did not support more than a minimal degree of limitation in her ability to perform basic work tasks due to this impairment, and thus found Puceta's obesity to be non-severe. *Id.* At step three, the ALJ found that Puceta did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P Appendix 1. (Admin Tr. 12-13; Doc. 8-2 pp. 13-14).

Before proceeding to step four, the ALJ found that, through her date last insured, Puceta had the requisite RFC to perform a full range of work at all exertional levels, and retained the mental capacity for:

8

Simple, routine, repetitive tasks in a work environment free from fast-paced production, requires simple work-related decision-making with few, if any, work place changes, no interaction with the public, occasional interaction with coworkers and no tandem tasks and occasional supervision.

(Admin Tr. 14; Doc. 8-2 p. 14).

In making his RFC determination, the ALJ considered opinions by consultative examiner, Dr. Bowers, who prepared a report commissioned by the Social Security Administration, and the opinion of a state agency consultant, Dr. Amanullah who formulated an opinion after reviewing the available medical records. In his May 2010 report, Dr. Bowers assessed Bipolar Affective Disorder, noted a possible personality disorder, and assigned Puceta a Global Assessment of Functioning ("GAF") score of 40.[2] (Admin Tr. 37; Doc. 8-8 p. 49). Dr. Bowers noted that Puceta's appearance was "simple and rudimentary," her behaviors was mildly dysthymic, and her speech demonstrated some anguish. (Admin Tr. 375; Doc. 8-8 p. 47). Dr. Bowers also observed Puceta's intellect to be sound, her abilities in abstract thinking to

―――――――――――――――

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. *See Diagnostic and Statistical Manual of Mental Disorders*, 32-34(4th ed. text rev. 2000). A GAF score of 21-30 represents behavior considerable influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. *Id.* at 34. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.* A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.* A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. *Id.* A GAF score of 71-80 represents transient symptoms, if present, and expectable reactions to psychosocial stressors or no more than slight impairment in social, occupational, or school functioning. *Id.*

be fair to average, and noted that she demonstrated adequate acquisition, retention, and retrieval. (Admin Tr. 376; Doc. 8-8 p. 48). Nonetheless, in a medical source statement Dr. Bowers indicated that Puceta's impairments resulted in a marked restriction in her ability to carry out detailed instructions, make judgments on simple work-related decisions, and respond appropriately to work pressures. (Admin Tr. 378-80; Doc. 8-8 pp. 50-52). Dr. Amanullah opined that the medical evidence of record established the existence of medically determinable impairments of "Depressive Disorder, NOS Vs. Bipolar Disorder Vs. Major Depression, Obsessive Compulsive Disorder, Attention Deficit Disorder and Borderline Personality Disorder." (Admin Tr. 383; Doc. 8-8 p. 55). Dr. Amanullah noted that:

> Sustained attention is likely problematic. Pace is an issue, stress exacerbates her symptoms. There are no restrictions in her abilities in regards to understanding and memory. Review of the medical evidence reveals that the claimant retains the abilities to manage the mental demand of many jobs not requiring complicated tasks … The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments.

> *Id.*

At step four, the ALJ found that Puceta could no longer meet the mental demands of her past relevant work as a cashier, laborer, or personal attendant. (Admin Tr.18-19; Doc. 8-2 pp. 19-20).

At step five, the ALJ found that, considering Puceta's age, education, work experience, and the above-mentioned RFC, there were jobs that existed in significant numbers in the national economy that Puceta could have performed. The ALJ's findings at this step were based on testimony by a VE that a hypothetical individual with the same RFC and vocational factors as Puceta could perform the representative occupations of surveillance system monitor and conveyor line bakery worker. (Admin Tr. 19; Doc. 8-2 p. 59).

10

C. THE ALJ'S FINDINGS AT STEP THREE ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

The listing of impairments published by the Social Security Administration is used to streamline the decision-making process in adjudicating claims for benefits by acknowledging those impairments that are so severe as to preclude substantial gainful activity independent of any other factor. If a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled per se, and is awarded benefits. 20 C.F.R. §404.1520(d). However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Puceta bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ; 20 C.F.R. § 404.1520(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

Listing 12.04 consists of a diagnostic description, and paragraph A, B, and C criteria to assess the severity of the condition. In order to meet Listing 12.04, Plaintiff must meet the requirements of the diagnostic description in the introductory paragraph – which in this case means that Puceta must show that she suffers from an "affective disorder" characterized by "a disturbance of mood, accompanied by a full or partial manic or depressive syndrome – and the criteria of both paragraphs A and B, *or* paragraph C (when appropriate). 20 C.F.R. Part 404 Subpart P Appendix 1 §§12.00, 12.04. Puceta contends her bipolar disorder is an affective disorder, and that she meets the requirements of the paragraph A and B criteria of Listing

12.04.[3] The Commissioner contends that Puceta has failed to meet the paragraph B criteria of Listing 12.04.

To meet the paragraph B criteria of Listing 12.04, Puceta's affective disorder must result in at least two of the following: a marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or, repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404 Subpart P Appendix 1 §12.04. The ALJ found that Puceta's bipolar disorder resulted in a mild restriction of activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and had experienced no episodes of decompensation of extended duration. (Admin Tr. 13-14, Doc. 8-2 pp. 14-15). Puceta contends that the ALJ's findings with respect to two categories – activities of daily living and maintaining

---

[3]     We note that, in his decision, the ALJ did not comment on whether Puceta met the paragraph A criteria of Listing 12.04. In her brief, Puceta contends that the requirements of Listing 12.04 paragraph A(1) have been met. (Doc. 9 pp. 8-9). To meet the paragraph A(1) criteria of Listing 12.04, Puceta must demonstrate medically documented persistence, either continuous or intermittent, of at least four of the following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor retardation; decreased energy; thoughts of suicide; or hallucinations, delusions, or paranoid thinking. 20 C.F.R. Part 404 Subpart P Appendix 1 §12.04A1. Specifically, she asserts that: Puceta has one documented episode where she manifested suicidal ideation; one treatment note reflects that Plaintiff reported a "loss of energy" *or* loss of "interest in activities"; Puceta reported to Dr. Bowers that her sleep is "on and off," her appetite "comes and goes" and that this has been accompanied by weight gain; and, Dr. Bowers also noted that Puceta described possible hallucinations. (Doc. 9 pp.8-9); (*see also* Admin Tr. 296-97, 375; Doc. 8-7 pp. 35-36, Doc. 8-8 p. 47).

concentration and pace – are erroneous, and asserts that Puceta's limitations in these areas are marked rather than "mild" and "moderate."

Activities of daily living include, but are not limited to, such activities as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, carrying appropriately for your grooming or hygiene, using telephones and directories, and using a post office." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C1. In order to assess the degree of a claimant's impairment in this area, the ALJ considers the nature and overall degree of interference of function. *Id*. In determining that Puceta suffered from only mild limitation in activities of daily living, the ALJ noted that:

> The claimant alleges not being able to do much around the house or with raising her daughter and that she needs constant reminders from her mother to do the simplest of activities. However, the record shows that with medication compliance, the claimant is able to perform daily tasks and her personal grooming is more motivated. The claimant also admitted to doing dishes, cleaning her room and bathroom, going shopping with her mother, and driving herself to appointments. The claimant's mother also reported that the claimant takes the dog to the veterinarian and that she cooks, cleans and does laundry when instructed to do so. The claimant recently reported applying for public housing, which indicates that she feels capable of tending to daily tasks independently without difficulty.

(Admin Tr. 13; Doc. 8-2 p. 13). This Court's review of the record reveals that the ALJ's findings have some support in the record. Namely, in an activities of daily living questionnaire completed by Puceta in July 2011, Puceta reported that she is able to: wash dishes; clean her bathroom; clean her bedroom; remind her daughter to do her chores; weed gardens; go grocery shopping with her mother once per week; and drive to doctors' appointments within a fifty mile radius unaccompanied. (Admin Tr. 250-53; Doc. 8-6 pp. 50-53). Puceta's mother confirmed, by submitting a similar questionnaire, that she is able to: prepare meals (if given specific instructions); care for family pets by taking them to the vet and groomer; maintain her own

personal hygiene, especially while taking her medications; do laundry, clean and dust; do yard work; go out alone; and handle money (though her mother opines that she does so irresponsibly). (Admin Tr. 221-28; Doc. 8-6 pp. 21-28). The record also reflects that, in September 2012, Puceta told her counselor that she had applied for public housing. (Admin Tr. 425; Doc. 8-9 p. 7). Based on the above, the Court finds that the ALJ's determination that Puceta has a mild restriction of activities of daily living is supported by substantial evidence.

Concentration, persistence, or pace refers to a claimant's ability to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work setting." 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00C3. In order to assess the degree of a claimant's limitation in this area, the ALJ considers the nature and overall degree of impairment's interference with an individual's ability to function. *Id.* For example, an individual that can sustain attention and persist at simple tasks, but has difficulty with complex tasks would not satisfy paragraph B. *Id.* In determining that Puceta suffered from only moderate difficulties in concentration, persistence or pace, the ALJ noted that:

> The claimant reports difficulty remaining on task without reminders from her mother. She also reports problems handling finances due to spending unnecessarily. However, the record establishes goal directed thoughts, good memory and that the claimant is a reliable historian. The claimant also reports being able to read up to three hours at a time, and able to drive up to 50 miles at a time. She is able to follow a schedule to attend appointments; and according to her mother, can cook a meal and independently perform tasks to completion if instructed to do so.

(Admin Tr. 13; Doc. 8-2 p. 15). This Court's review of the record reveals that the ALJ's findings have some support in the record. It was repeatedly observed by Dr. Trayer that Puceta exhibited goal directed speech, clear and appropriate thought processes, intact immediate memory and recall, and "grossly intact" attention span and concentration. (Admin Tr. 413,

418, 421; Doc. 8-8 pp. 85, 90, Doc. 8-9 p. 3). An appointment tracking form from her counselor reveals that Puceta almost never missed a scheduled counseling session. (Admin Tr. 348-50; Doc. 8-8 pp. 20-22). In a daily activities questionnaire Puceta reported that she could read a book for up to three hours at one time and drives herself to medical appointments up to fifty miles from her home. (Admin Tr. 251-52; Doc. 8-6 pp. 51-52). Furthermore, Ms. Connors reported that Puceta can cook a meal if "explicitly directed," and can "sometimes" independently complete tasks in instructed to do so. (Admin Tr. 222, 226; Doc. 8-6 pp. 22, 26). Based on the above, the Court finds that substantial evidence supports the ALJ's determination that Puceta suffers from only moderate difficulties in concentration, persistence or pace.

### D. THE ALJ PROPERLY DISCOUNTED THE MEDICAL REPORT OF THE CONSULTATIVE EXAMINER

In her brief, Puceta asserts that the ALJ erred in relying on the opinion of reviewing Dr. Amanullah over that of an examining source, Dr. Bowers. (Doc. 9 p. 12). Specifically, Puceta asserts that, as an examining source, Dr. Bowers' opinion should be accorded greater weight than an opinion by a physician who has never examined Puceta. *See* 20 C.F.R. §404.1527(c)(1)("Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). However, it is well-established in the Third Circuit that "[w]hen a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons. The ALJ must consider all the evidence and give some reason for discounting the evidence [he or] she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)(internal quotations omitted). Moreover, the Social Security Regulations provide a framework under which such evidence should evaluated. Pursuant to 20 C.F.R. § 404.1527(c) non-controlling medical opinions, like

the opinions at issue, must be weighed based on: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

Here, the ALJ concurred with the moderate limitations[4] identified by Dr. Bowers, and explained that he accounted for those limitations by restricting Puceta to work that requires no more than "simple, routine, repetitive tasks requiring simple work related decision making and dealing with work place changes." (Admin Tr. 18; Doc. 8-2 p. 19). The ALJ then discounted Dr. Bowers' opinion that Puceta had marked limitations in her ability to carry out detailed

--------------------

[4] The Court notes that the medical source statement form completed by Dr. Bowers request that the a claimant's degree of limitation be classified as "none," "slight," "moderate," "marked," or "extreme." (Admin Tr. 378, Doc. 8-8 p. 50). The cover page of the form defines the level of limitation in each category as follows:

> None – absent or minimal limitations. If limitations are present they are transient and/or expectable reactions to psychological stressors.

> Slight – There is some mild limitation in the area, but the individual can generally function well.

> Moderate – There is moderate limitation in this area, but the individual is still able to function satisfactorily

> Marked – There is serious limitation in this area. The ability to function is severely limitation but no precluded.

> Extreme – There is major limitation in this area. There is no useful ability to function in this area.

Id.

instructions, marked limitations in her ability to make judgments on simple work-related decisions, and GAF score of 40, because they were unsupported by any clinical findings and were inconsistent with the lack of psychiatric care required by the Puceta. *Id.* The ALJ also found the report to be based primarily on Puceta's subjective complaints. *Id.; See e.g. Morris v. Barnhart*, 78 Fed. Appx. 820, 825 (3d Cir. 2003)(upholding an ALJ's decision to discredit a physician's opinion on disability that was premised largely on the claimant's own account of his symptoms and limitations where the claimant's complaints were also properly discounted). The Court recognizes that, as Puceta contends, *one* regulatory factor weighs in her favor. However, in his decision, the ALJ cited several proper bases to discount Dr. Bowers' opinion. Furthermore, the Court finds the ALJ's reasoning on this issue is supported by substantial evidence in the record, namely, that Puceta's treating psychiatrist, Dr. Trayer, assigned her with a GAF score of 68 two months after Dr. Bowers assigned her a GAF of 40. (Admin Tr. 407; Doc. 8-8 p. 79). The ALJ noted that there was a one year gap in Puceta's mental health treatment records between July 2011 and August 2012, and that as early as December 2009, Puceta began to actively seek employment, and was encouraged by her counselor to continue to do so. Counseling session notes dated December 30, 2009, reflect that Puceta was showering and changing clothes daily. (Admin Tr. 336; Doc. 8-8 p.8). On January 19, 2010, Puceta's counselor noted that Puceta was wearing make-up and had her hair done during the week her mother was away on vacation. (Admin Tr. 367; Doc. 8-8 p. 39). On March 4, 2010, session notes reflect that Puceta reported going to a job interview. (Admin Tr. 369; Doc. 8-8 p. 41). Accordingly, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Bowers' opinion.

With respect to Puceta's allegation that the ALJ improperly relied on the opinion of Dr. Amanullah, SSR 96-6p expressly provides that, the opinions of state agency psychological consultants, like Dr. Amanullah can be given weight "only insofar as they are supported by the evidence in the case record" and recognizes that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating sources." 1996 WL 374180, at *2-3. Puceta's only objection to the ALJ's reliance on this opinion is due to the fact that it was accorded greater weight than that of Dr. Bowers' opinion, which we find was properly discounted. Further, the Court finds that the ALJ adequately explained and supported the basis for his reliance on Dr. Amanullah's opinion – he found that it was more consistent with Puceta's clinical history, stable symptomatology, and self-identified daily activities – which Puceta does not dispute. Accordingly, the Court finds that the ALJ did not err in according significant weight to Dr. Amanullah.

E. THE ALJ ADEQUATELY SUPPORTED AND EXPLAINED HIS CREDIBILITY ASSESSMENT

Puceta contends that the ALJ rejected Puceta's credibility without adequately explaining his rationale.[5] An ALJ's findings based on the credibility of a claimant are to be accorded great

———————————

[5] Puceta also contends that the ALJ improperly discounted statements made by her mother in a third party function report. The Court notes that the Social Security Rulings and Regulations allow for the consideration of evidence from "non-medical sources," like Ms. Connors to provide insight into the severity of a claimant's impairment and how it affects the claimant's ability to function. SSR 06-3p, 2006 WL 2329939, at *2. In considering evidence from "non-medical sources" like Ms. Connors, it is appropriate to consider such factors as the nature and extent of the relationship between the source and the claimant, the consistency of the statement

*(footnote continued on next page)*

weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)). The Social Security Rulings and Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529; SSR 96-4p, 1996 WL 374187; SSR 96-7p, 1996 WL 374186. First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b); SSR 96-7p, 1996 WL 374186. Once the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms has been established, the adjudicator must recognize that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 96-7p, 1996 WL 374186 at*3. Thus, during the second step of his or her credibility assessment, the ALJ must determine whether the claimant's statements about the

with other evidence, and any other factors that tend to support or refuse the evidence. *Id.* at 6. Here, the ALJ clearly considered, and made frequent reference to, Ms. Connors' statements throughout his decision. The ALJ explained that he did not credit Ms. Connors statements regarding the severity of Puceta's symptoms and limitations to their full extent and cited ample evidence for doing so; including evidence of Puceta's daily activities – which made Ms. Connors statements as to severity appear overstated—and treatment notes reflecting vast improvement in Puceta's condition with therapy and medication management. (Admin Tr. 17-18; Doc. 8-2 p. 18-19). The ALJ also noted that the close nature of Ms. Connors relationship to Puceta may have impacted her opinions as to the severity of Puceta's symptoms. *Id.* Accordingly, the Court finds that the ALJ's decision to accord "limited weight" to Ms. Connors statements is supported by substantial evidence.

Case 4:14-cv-00336-MWB   Document 14   Filed 01/29/15   Page 20 of 24

intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the adjudicator's evaluation of the entire case record. [6] 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and "other medical sources"; and, information concerning the claimant's symptoms and how they affect his or her ability to work. *Id.*

Based on his or her consideration of the evidence, the ALJ may find all, some, or none of a claimant's statements to be credible. SSR 96-7p, 1996 WL 374186 at *4. Like here, the ALJ may also find that a claimant's statements are generally credible, but to a lesser degree– i.e., that Puceta's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that the statements by Puceta and her mother concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with his RFC assessment. (Admin Tr. 15; Doc. 8-2 p. 16). By way of explanation, the ALJ noted that despite Puceta's allegations of disabling mood swings, focal deficits, sleep

---

[6] The ALJ will consider factors relevant to a claimant's symptoms such as: the claimant's daily activities; location duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatments, other than medication, the claimant received to relieve his or her symptoms; any measures the claimant uses or has used to relieve his or her symptoms; and, any other factors concerning his or her functional limitations and restrictions due to his or her symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

difficulties, worsening depression, and her purported inability to maintain her own personal care:

> she is doing well with therapy and her medication regimen. She denies medication side effects and reports doing well with treatment. Therapy notes show that claimant is motivated with her grooming and with taking care of herself and her daughter …The claimant also reports being able to do dishes, clean her room and bathroom with some reminders, going shopping once a week, reading for up to 3 hours at a time, and able to drive herself to appointments and up to a 50 mile radius.

(Admin Tr. 17; Doc. 8-2 p. 18). The ALJ also noted that the temporary exacerbation of her symptoms in April 2009 occurred during a period of medication non-compliance in which Puceta also admitted to feeling stressed after she was fired for falsifying time sheets. (Admin Tr. 16; Doc. 8-2 p. 17). The Court finds that the ALJ satisfied his obligation to explain his assessment of Puceta's credibility, and that his overall assessment is supported by substantial evidence, including Puceta's own testimony about her daily activities, her counselor's session notes, and her medical records.

F. THE ALJ ADEQUATELY ADDRESSED PUCETA'S IMPAIRMENT OF MILD OBESITY

Last, Puceta alleges that the ALJ failed to give serious consideration to Puceta's obesity, as directed by the Appeals Council when the first decision denying her claim was remanded. The Commissioner contends that the ALJ's determination that Puceta's diagnosed condition of "mild obesity" was medically determinable but non-severe is supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairments are (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test. 20 C.F.R. § 404.1520. If a claimant has no impairment or combination of impairments which significantly limits his or her physical or

mental abilities to perform basic work activities, i.e. a medically determinable severe impairment, the claimant will be found "not disabled" and the evaluation process ends at step two. *Id.*; *see also* SSR 85-28, 1985 WL 56856, at *3 ("An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). If, however, the claimant has *any* medically determinable impairment that is severe, the evaluation process continues. *Id.* The Third Circuit has observed that "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Moreover, any doubt as to whether a claimant has made a sufficient showing of severity at step two should be resolved in his or her favor. *Id.*

Like other impairments, obesity is considered medically determinable and severe, only if either alone or in combination with another medically determinable physical or mental impairment, it significantly limits and individual's physical or mental ability to do basic work activities. SSR 02-1p, 2002 WL 34686281, at *4. There is no specific level of weight or BMI that equates with a "severe" or not "severe" impairment due to obesity. *Id.* Furthermore, descriptive terms for levels of obesity – i.e., "severe," "extreme," or morbid – establish whether obesity is or is not a severe impairment. *Id.* Here, the ALJ noted that though Puceta was diagnosed with "mild obesity," was 68 inches tall and weighed 227 pounds, she has not reported any difficulties related to obesity, did not exhibit any problems ambulating or performing physical tasks, and there is no indication that any treatment was recommended for this condition. (Admin Tr. 12-13; Doc. 8-2 pp. 13-14). The Court finds that the ALJ's characterization of the lack of evidence

of any significant limitation due to obesity is accurate, and thus concludes that his finding that Puceta's obesity was non-severe is supported by substantial evidence.

With respect to Puceta's assertion that the ALJ did not give adequate consideration to this issue in light of the Appeals Council's remand order, and failed to consider Puceta's obesity in his RFC assessment, the Court finds this argument lacks merit. In its remand order, the Appeals Council directed the ALJ to evaluate Puceta's obesity "in combination with her other severe impairments." (Admin Tr. 83; Doc. 8-3 p. 23). Further, the Social Security regulations contemplate that, in assessing a claimant's RFC prior to step four, the ALJ considers the symptoms, or resultant limitations, of all medically determinable impairments, whether they are found severe or non-severe at step-two. 20 C.F.R. §404.1545. Puceta has not alleged any symptom or limitation that is exacerbated by, or caused as a result of, her medically determinable non-severe impairment of obesity. Further, Puceta has failed to identify any symptom or limitation that was not adequately accounted for in the ALJ's RFC assessment. Accordingly, the Court finds that Puceta's argument lacks merit.

III.   **RECOMMENDATION**

Based on the foregoing, it is recommended that the Court enter judgment in favor of the Commissioner and against Plaintiff Davina Puceta, and **AFFIRM** the final decision of the Commissioner of Social Security.

**Dated: January 29, 2015**                                    *s/ Karoline Mehalchick*
                                                                              **KAROLINE MEHALCHICK**
                                                                              **United States Magistrate Judge**

23

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**DAVINA G. PUCETA**,

           Plaintiff

    v.

**CAROLYN W. COLVIN,** *Commissioner of the Social Security Administration*,

           Defendant

CIVIL ACTION NO. 4:14-CV-00336

(BRANN, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 29, 2015**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: January 29, 2015**

                *s/ Karoline Mehalchick*

                **KAROLINE MEHALCHICK**
                **United States Magistrate Judge**